UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **TAHSIN RAHMAN**, <br><br> Plaintiff, <br><br> v. <br><br> **MEGAN BOULDIN**, *et al.*, <br><br> Defendants. | Case No. 1:25-cv-01836 (TNM) |

**MEMORANDUM OPINION**

Tahsin Rahman is a Bangladeshi citizen who wishes to live in the United States with her husband. Rahman's husband, himself a U.S. citizen, filed a visa petition for her to join him, and she interviewed at the U.S. embassy in Bangladesh. After multiple inquiries, Rahman learned that her application has been denied but remains in administrative processing. Disheartened by the delay, Rahman sues to compel the Government to more quickly adjudicate her application. The Government moves to dismiss the case. The Court will grant the Government's motion.

I.

Tahsin Rahman is a Bangladeshi citizen who lives in Bangladesh with her U.S. citizen daughter. Compl., ECF No. 1, ¶¶ 8, 11. In early May 2022, Rahman's now-husband—a U.S. citizen living in the United States—filed an I-130 visa petition on her behalf. *Id.* ¶¶ 2, 17. Although Rahman and her husband did not marry until 2023, they hoped to live together in the United States, especially after welcoming their daughter in 2024. *Id.* ¶¶ 7–8, 19. To that end, Rahman interviewed in September 2024 at the U.S. embassy in Bangladesh. *Id.* ¶¶ 20–21.

Later that year, Rahman's husband reached out to the embassy about her case, and embassy staff informed him that Rahman's application had been adjudicated and denied. *Id.*

¶ 23; Pl.'s Ex. E, ECF No. 1-5, at 8–9.  Unsatisfied with this response, Rahman's husband inquired twice more over the following months, and embassy staff told him that Rahman's case needed additional processing.  Compl. ¶¶ 24–26; Pl.'s Ex. E at 2–7.  Currently, the State Department website shows Rahman's visa status as "Refused"—and specifies that if her "case was refused for administrative processing, [her] case will remain refused while undergoing such processing."  Compl. ¶ 22; Pl.'s Ex. D, ECF No. 1-4, at 2.  Rahman and her husband remain separated during her application's processing, putting financial and emotional strain on their family.  Compl. ¶¶ 6–10.  Rahman cannot work in Bangladesh and relies solely on income from her husband, who cannot afford to visit her.  *Id.* ¶¶ 9–10.

Exactly nine months after her interview, Rahman sued the Deputy Chief of Mission at the U.S. embassy in Bangladesh and the Secretary of State,[1] asserting that the Government has unreasonably delayed its duty to adjudicate her visa application.  *Id.* ¶¶ 27–38.  Rahman asks this Court to order the Government to "process [her] visa application within fifteen (15) calendar days . . . or as soon as reasonably possible."  *Id.* ¶ 39.  The Government moves to dismiss, and its motion is now ripe.

## II.

The Government's dismissal request invokes Federal Rule of Civil Procedure 12(b)(6).[2] To survive dismissal, a plaintiff must "state a claim to relief that is plausible on its face."

---

[1] The Court will dismiss Rahman's claims against the Secretary of State because consular officers—not the Secretary—have exclusive authority to adjudicate visa applications. *Yaghoubnezhad v. Stufft*, 734 F. Supp. 3d 87, 97–98 (D.D.C. 2024); *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021); 8 U.S.C. § 1104(a).  Because the Secretary cannot provide Rahman the relief she seeks, she lacks Article III standing to sue him.  *Accord Liew v. Sanders*, 737 F. Supp. 3d 30, 36 (D.D.C. 2024).

[2] The Government also moves to dismiss under Federal Rule of Civil Procedure 12(b)(1).  Mot. to Dismiss, ECF No. 5, at 7.  The Court lacks subject matter jurisdiction over Rahman's claims against the Secretary.  *Supra* n.1; *see Grocery Mfrs. Ass'n v. EPA*, 693 F.3d 169, 174 (D.C. Cir.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint must "allow[] the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The Court must accept all "well-pleaded factual allegations," but it need not credit "legal conclusions." *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015).

### III.

Rahman's lawsuit resembles others that the Court has previously dismissed. Like those cases, Rahman's claims falter for two independent reasons: first, because the Government has performed its nondiscretionary duty by denying her visa; and second, because consular nonreviewability bars her suit. The Court discusses each reason in turn.

### A.

Rahman wants the Court to compel the Government to more quickly adjudicate her visa application. She invokes the Mandamus Act, 28 U.S.C. § 1361, and the Administrative Procedure Act, 5 U.S.C. § 706. Compl. ¶¶ 29, 33. The parties agree that Rahman's pleading burden is essentially the same for both causes of action, so the Court addresses them together. *See* Mot. to Dismiss, ECF No. 5, at 11; Opp'n to Mot. to Dismiss, ECF No. 6, at 17; *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008). The crux of both claims is that Rahman must plausibly allege that the Government "failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (emphasis in

---

2012) ("Standing under Article III is jurisdictional."). The Court also lacks subject matter jurisdiction over Rahman's claim under the Mandamus Act because she cannot meet its requirements. *See infra* Part III.A; *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016). But the Court has subject matter jurisdiction under 28 U.S.C. § 1331 over Rahman's APA claim. More, the Supreme Court has made clear that consular nonreviewability is non-jurisdictional. *Dep't of State v. Muñoz*, 602 U.S. 899, 908 n.4 (2024).

3

original); *see also In re Bluewater Network*, 234 F.3d 1305, 1315 (D.C. Cir. 2000) ("[I]ssuance of the writ [of mandamus] is an extraordinary remedy, reserved only for the most transparent violations of a clear duty to act.").

The Immigration and Nationality Act ("INA") provides that "[a]ll immigrant visa applications shall be reviewed and adjudicated by a consular officer." 8 U.S.C. § 1202(b). When adjudicating the application, "the consular officer must issue the visa, refuse the visa under INA 212(a) or 221(g) or other applicable law or . . . discontinue granting the visa." 22 C.F.R. § 42.81(a); *see also id.* § 41.121(a). In other words, the consular officer has a "discrete, nondiscretionary [duty] to adjudicate visa applications." *Yaghoubnezhad v. Stufft*, 734 F. Supp. 3d 87, 99 (D.D.C. 2024).

The Government has fulfilled its nondiscretionary duty here. As Rahman concedes, a consular officer adjudicated and refused her visa application under INA § 221(g). Compl. ¶¶ 22–23; Opp'n to Mot. to Dismiss at 15. That is all the INA and its regulations require. *See* 8 U.S.C. § 1202(b); 22 C.F.R. §§ 42.81(a), 41.121(a); *Yaghoubnezhad*, 734 F. Supp. 3d at 99.

Rahman contends that the Government must do more. She asserts that "Defendants retain a non-discretionary duty to adjudicate [her] visa application through conclusion and within a reasonable time." Opp'n to Mot. to Dismiss at 15. The Government has not discharged that duty, Rahman maintains, because its "preliminary" visa denial merely "plac[ed] her application into administrative processing status." *Id.*

Rahman's position finds no footing. "By arguing that [the Government] must complete administrative processing and issue a 'final' refusal, [Rahman] ask[s] the Court to impose a duty that has no basis in the INA or its implementing regulations." *See Yaghoubnezhad*, 734 F. Supp. 3d at 102. While the regulations provide various avenues for the consular officer to review or

4

reconsider visa applications, nothing requires the Government "to issue a final, unreviewable decision" or even "complete administrative processing once it has properly refused a visa." *See id.* at 100–101 (cleaned up). As the D.C. Circuit held in *Karimova v. Abate*, No. 23-5178, 2024 WL 3517852 (D.C. Cir. July 24, 2024) (per curiam), the Government has no duty to "make yet another 'final decision' on [Rahman's] already-refused visa application." *See id.* at \*6; *accord, e.g.*, *Liew v. Sanders*, 737 F. Supp. 3d 30, 36–37 (D.D.C. 2024).

One note on *Karimova*. The Court considers that case to be persuasive authority only. The Government, meanwhile, asserts that the D.C. Circuit's unpublished decision is binding on this Court. *See* Mot. to Dismiss at 12 n.2, 15. That is mistaken for the reasons the Court explained at some length in *Akter v. Rubio*, --- F. Supp. 3d ---, 2025 WL 1950884, at \*4–5 (D.D.C. 2025). After all, D.C. Circuit Rule 36(e)(2) makes clear that "a panel's decision to issue an unpublished disposition means that the panel sees no precedential value in that disposition." Still, while non-binding, *Karimova* persuasively explains that a visa applicant has no legal right to anything more than the "official refusal decision she already received." 2024 WL 3517852, at \*4.

\* \* \*

The Government has satisfied its duty by adjudicating Rahman's visa application. Rahman's case fails for this reason alone.

**B.**

Rahman's suit also founders on consular nonreviewability. The Supreme Court has long recognized that "admission and exclusion of foreign nationals is a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control." *Dep't of State v. Muñoz*, 602 U.S. 899, 907 (2024). Courts "ha[ve] no role to play

unless expressly authorized by law." *Id.* at 908 (cleaned up).  And because the INA "does not authorize judicial review of a consular officer's denial of a visa," "the federal courts cannot review those decisions." *Id.* (footnote omitted).[3]

Rahman's claim falls headfirst into consular nonreviewability.  As Rahman admits, a consular officer has already denied her visa application.  Compl. ¶¶ 22–23.  There thus "has been a final decision on the merits of [Rahman's] application," and consular nonreviewability prevents the Court from "inquir[ing] into the basis or validity of that decision."  *See Sedaghatdoust v. Blinken*, 735 F. Supp. 3d 1, 7 (D.D.C. 2024).  In an attempt to evade consular nonreviewability, Rahman insists that her application remains in "administrative processing," which supposedly makes the earlier refusal nonfinal.  Opp'n to Mot. to Dismiss at 24.  But that will not do.  After all, compelling the Government to speed up its administrative processing would be "no different from ordering [it] to reopen a dispositive adjudication."  *Yaghoubnezhad*, 734 F. Supp. 3d at 104.  That is why the "bar on judicial review applies both to 'the substance of a consular officer's visa determination' as well as the decision to place a visa application into post-refusal 'administrative processing' for 'discretionary re-adjudication of' the application." *Sedaghatdoust*, 735 F. Supp. 3d at 7 (quoting *Yaghoubnezhad*, 734 F. Supp. 3d at 103).  That bar blocks Rahman's suit.

Because Rahman's case already fails on two independent grounds, the Court declines to address whether there was undue delay under the factors outlined in *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70 (D.C. Cir. 1984).  But the prospects for that

---

[3] There is one slim carveout to consular nonreviewability: "when the denial of a visa allegedly burdens the constitutional rights of a U.S. citizen." *Trump v. Hawaii*, 585 U.S. 667, 703 (2018); *Baan Rao*, 985 F.3d at 1024–25.  Even if Rahman had argued for it, this exception would not have helped her because *Muñoz* ruled that "a citizen does not have a fundamental liberty interest in [his] noncitizen spouse being admitted to the country."  602 U.S. at 909.

claim would also be gloomy. *See, e.g.*, *Yaghoubnezhad*, 734 F. Supp. 3d at 104–05 (holding that a 22-month delay was not unreasonable and collecting cases upholding similar or even longer delays); *Dastagir v. Blinken,* 557 F. Supp. 3d 160, 165 (D.D.C. 2021) (finding that 29-month delay was not unreasonable).

### IV.

The Government has validly refused Rahman's application for entry into this country. At this point, "[t]he Judicial Branch has no role to play." *Muñoz*, 602 U.S. at 908. The Court will therefore dismiss Rahman's case. A separate Order will issue today.

Dated: November 21, 2025                                                    TREVOR N. McFADDEN, U.S.D.J.